USCA1 Opinion

 

 August 16, 1994 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-2145 DPJ COMPANY LIMITED PARTNERSHIP, Plaintiff, Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR BANK OF NEW ENGLAND, N.A., Defendant, Appellee. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this court issued on July 27, 1994, is amended as follows: On page 7, footnote 1, line 3, change "Cobblestone" to ___________ "Cobblestone". On page 8, paragraph 2, line 1, change "reliance of damages" to "reliance damages". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2145 DPJ COMPANY LIMITED PARTNERSHIP, Plaintiff, Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR BANK OF NEW ENGLAND, N.A., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Robert D. Loventhal with whom Robert D. Loventhal Law Office was ___________________ _______________________________ on brief for appellant. Gregory E. Gore, Counsel, Federal Deposit Insurance Corporation, _______________ with whom Ann S. DuRoss, Assistant General Counsel, and Robert D. ______________ _________ McGillicuddy, Senior Counsel, were on brief for appellee. ____________ ____________________ July 27, 1994 ____________________ BOUDIN, Circuit Judge. DPJ Company Limited Partnership _____________ ("DPJ") is a Massachusetts real estate developer. On February 12, 1988, it entered into a commitment letter agreement with the Bank of New England. Subject to various conditions being satisfied, the agreement contemplated the creation of a three-year $2.5 million line of credit on which DPJ could draw to finance primary steps in land development ventures (e.g., deposits, option payments, and architectural ____ and engineering services). The commitment letter provided that the creation of the line of credit--an event called the "closing" (as in "closing" a deal)--would occur after DPJ met various requirements, such as the delivery to the bank of certain documents, appraisals, and the like. DPJ also had to pay a non-refundable loan commitment fee of $31,250 immediately. In satisfying the conditions, DPJ spent a total of $180,072.37 in commitment fees, closing costs, legal fees, survey costs, points, environmental reports and other such items. The line of credit was "closed" on July 23, 1988. Between that time and January 6, 1991, DPJ borrowed approximately $500,000 from the bank pursuant to the line of credit. The bank failed on January 6, 1991. On February 1, 1991, the bank's receiver, the Federal Deposit Insurance Corporation, disaffirmed the line of credit agreement -2- -2- pursuant to its statutory authority to repudiate contracts of failed banks. 12 U.S.C. 1821(e)(1). Although the FDIC may repudiate such contracts, the injured party may under the statute sue the FDIC as receiver for damages for breach of contract; but, with certain exceptions, the injured party may recover only "actual direct compensatory damages," 12 U.S.C. 1821(e)(3)(A)(i), and may not recover inter alia "damages _____ ____ for lost profits or opportunities." Id. 1821(e)(3)(B)(ii). ___ On May 22, 1991, DPJ filed an administrative claim with the FDIC to recover the costs and expenses it incurred pursuant to the commitment letter mentioned to obtain the line of credit. 12 U.S.C. 1821(d)(5). The FDIC disallowed the claim. DPJ then brought suit in the district court to recover its claimed damages. Id. 1821(d)(6)(A). Both ___ sides moved for summary judgment. The district court entered a decision on September 10, 1993, denying recovery to DPJ. The court concluded that DPJ was "really seek[ing] to recoup its closing costs as compensation for its lost borrowing opportunity resulting from the FDIC's disaffirmance." In substance, the court held that the "loss of borrowing capability" does not constitute "actual direct compensatory damages." In support of its decision it cited and relied upon Judge Zobel's decision in FDIC v. Cobblestone Corp., 1992 WL 333961 (D. Mass. Oct. 28, ____ _________________ 1992). DPJ then appealed to this court. -3- -3- The critical statutory phrases--"actual direct compensatory damages" and "lost profits and opportunities"-- have been the recurrent subject of litigation. See, e.g., ___ ____ Howell v. FDIC, 986 F.2d 569 (1st Cir. 1993); Lawson v. FDIC, ______ ____ ______ ____ 3 F.3d 11 (1st Cir. 1993). We have read the limitation of recovery to compensatory damages, and the exclusion barring lost profits or opportunities, against the background of Congress' evident purpose: "to spread the pain," in a situation where the assets are unlikely to cover all claims, by placing policy-based limits on what can be recouped as damages for repudiated contracts. Howell, 986 F.2d at 572; ______ Lawson, 3 F.3d at 16. ______ Contract damages are often calculated to place the injured party in the position that that party would have enjoyed if the other side had fulfilled its part of the bargain. Subject to various limitations, lost profits and opportunities are sometimes recovered under such a "benefit of the bargain" calculation. A. Farnsworth, Contracts _________ 12.14 (2d ed. 1990); C. McCormick, Damages, 25 (1935). Yet _______ where an injured claimant cannot recover the full benefit of the bargain--for example, because profits cannot be proved with sufficient certainty--there is an alternative, well- established contract damage theory: [O]ne who fails to meet the burden of proving prospective profits is not necessarily relegated to nominal damages. If one has relied on the contract, one -4- -4- can usually meet the burden of proving with sufficient certainty the extent of that reliance . . . . One can then recover damages based on reliance, with __________________________ deductions for any benefit received through salvage or otherwise." Farnsworth, supra, 12.16, at 928 (emphasis added). _____ As McCormick has explained, "[t]his recovery is strictly upon the contract," McCormick, supra, 142 at 583. It is _____ not a remedy for unjust enrichment, nor is it rescission of the contract. It is a contract damage computation that "conform[s] to the more general aim of awarding compensation in all cases, and [it] departs from the standard of value of performance only because of the difficulty in applying the [latter standard]." Id. at 583-84. See generally In re Las ___ _____________ __________ Colinas, Inc., 453 F.2d 911, 914 (1st Cir. 1971) (citing _____________ numerous authorities), cert. denied, 405 U.S. 1067 (1972). ____________ Subject to common-law limitations, to which we shall return in due course, expenditures by DPJ in fulfilling its part of the bargain can properly be recovered as compensatory damages under this alternative reliance theory. Certainly damages so computed do not offend the terms of the federal statute. The FDIC does not dispute that the $180,072.37 in costs and expenses were "actual" expenditures. And, as they were apparently made to fulfill specific stipulations laid down by the bank, the resulting damages can fairly be described as "direct," a term normally used to filter out damages that are causally remote, unforeseeable or both. -5- -5- Farnsworth, supra, at 12.14-12.15. _____ Similarly, DPJ's expenditures are not, by any stretch of literal language, "lost profits or opportunities." One might argue that since lost profits and opportunities are unrecoverable, the recovery of reliance damages would also offend the policy of the statute. But the policy underlying the statutory ban on lost profits and opportunities is Congress' apparent view that these benefits have, in some measure, an aspect of being windfall gains. This same policy is reflected in the disallowance of punitive or exemplary damages, 12 U.S.C. 1821(e)(3)(B)(i), and damages for future ______ rent when the FDIC disaffirms a lease and surrenders property previously leased by the bank. Id. 1821(e)(4)(B). ___ There is normally no windfall involved in the recovery of reliance damages. DPJ is seeking to recapture money actually spent under the commitment letter agreement to obtain a line of credit that the FDIC has now repudiated. Whether or not one shares Congress' belief that "lost profits and opportunities" are a special category of damages which should be disfavored, that policy is not even remotely offended by returning DPJ its out-of-pocket expenditures which, because of the FDIC's repudiation, have made DPJ's own expenditures (at least in part) fruitless. The district court called DPJ's claim one to recover for a "lost opportunity" since the breach of contract deprived -6- -6- DPJ of the opportunity to secure further loans. This could be so if, as in Cobblestone, DPJ were claiming profits that ___________ would have been realized through further loans.1 It might be arguably so (we do not decide the point) if DPJ was claiming as damages the cost of securing a substitute line of credit. But reliance damages do not compensate for a lost opportunity; they merely restore to the claimant what he or she spent before the opportunity was withdrawn. In sum, DPJ has claimed reliance damages in this case and we hold that reliance damages--or at least those claimed by DPJ--are "actual direct compensatory damages," are not compensation for "lost profits and opportunities," and are not barred by Cobblestone. Construction of the quoted ___________ statutory phrases is, of course, a matter of federal law, and the concept of reliance damages has long been recognized both in federal litigation, Rumsey Mfg. Corp. v. United States __________________ _____________ Hoffman Mach. Corp., 187 F.2d 927, 931-32 (2d Cir. 1951) (L. ____________________ Hand), and in Massachusetts. Air Technology Corp. v. General ____________________ _______ Elec. Co., 199 N.E.2d 538, 549 n.19 (Mass. 1964). _________ When we turn to the final issues in this case--the common-law limitations on reliance damages--the choice of ____________________ 1In Cobblestone, the company took the position that it ___________ had lost approximately $5 million because the FDIC repudiated a line of credit used by Cobblestone to finance equipment that it expected to lease to customers. We agree with the denial of such a lost-profits recovery in Cobblestone, but ___________ think the decision quite distinguishable. -7- -7- governing law is more debatable. The underlying obligation on which DPJ sues is a contract created by Massachusetts law. Federal law imposes statutory limits on the damages that may be awarded against the FDIC when it repudiates the contract. Whether the nuances and qualifications that shape reliance damages should be decided under Massachusetts law, federal law or conceivably both is an interesting question. It need not be answered here, because Massachusetts' view of reliance damages does not appear to depart from general practice. We turn, then, to possible common-law limitations on DPJ's recovery of reliance damages in this case. First, because reliance damages seek to measure the injured party's "cost of reliance" on the breached contract, "an injured party cannot recover for costs incurred before ______ that party made the contract." Farnsworth, supra, 12.16, _____ at 928 n.2. The FDIC in this case argues that, at the time DPJ made its expenditures, the bank had no obligation to make a loan at all, for that obligation arose only after the bank later made a discretionary judgment to "close" the transaction and establish the line of credit. Farnsworth, supra, 12.16, at 928 n.2. The FDIC concludes that DPJ's _____ pre-loan expenditures were not made in reliance upon the line of credit promise but were made in order to secure it. This will not wash. The commitment letter was itself an agreement that gave rise, upon the satisfying of conditions, -8- -8- to the bank's obligation to create and maintain DPJ's line of credit. Whether the bank reserved for itself the discretion to refuse to close (e.g., if dissatisfied with the documents ____ submitted to it), the DPJ expenditures were made pursuant to ________ the agreement and so "in preparing to perform and in part performance" by DPJ. McCormick, supra, 142, at 583. As a _____ practical matter, companies do not normally spend almost $200,000 in satisfying loan conditions without very good reason to expect that the loan itself will be approved. Thus, we think it is unrealistic to separate the expenditures by DPJ from the bank's promise to provide the line of credit and to make loans pursuant to it. Second, where full performance of a contract would have given claimant no benefit, or at least less than the reliance damages claimed, this fact may justify limiting or disallowing reliance damages. The notion is that claimant should on no account get more than would have accrued if the contract had been performed. Farnsworth, supra, 12.16, at _____ 930 & nn. 11-14 (citing cases). Prior to the bank's closing, DPJ had borrowed only $500,000; DPJ in turn says that it was preparing to borrow further on its line of credit when the FDIC put an end to the opportunity. If it has not waived the issue, on remand the FDIC might conceivably try to show that DPJ would in fact not have borrowed further on the line of credit and, therefore, that DPJ had in fact received -9- -9- everything it would have received had FDIC not disaffirmed the line of credit agreement. Third, a reliance recovery may be reduced to the extent that the breaching party can prove that a "deduction" is appropriate "for any benefit received [by the claimant] for salvage or otherwise." Farnsworth, supra, 12.16, at 928-29 _____ & nn. 1, 3 & 7 (citing cases). Compare Restatement (Second), _______ ____________________ Contracts 349 (benefits not mentioned). It is an _________ intriguing question whether, assuming that the issue is open, there should be any deduction for the benefit already received by DPJ by virtue of the $500,000 in loans actually made and, if so, how that deduction should be measured. These are by no means easy issues to resolve in the abstract. On the one hand the FDIC could argue, if it has not waived the issue, that DPJ received some portion of benefits promised by the agreement, such as 20 per cent of the potential loan amount ($500,000 out of $2.5 million) or the availability of credit for two and one half of the promised three years. On the other hand DPJ might have arguments as to why no equitable offset is proper. Neither side has briefed the relatively sparse caselaw pertaining to a possible deduction for benefits received where reliance ________ damages are claimed. There is no indication that the FDIC argued in the district court that DPJ would assuredly have declined to -10- -10- borrow further on the line of credit or that a deduction from the amount claimed should be made to account for benefit received. Certainly no such arguments have been made in this court. If the FDIC does press such arguments on remand, the district court can determine whether the arguments have been waived by a failure to assert them in a timely manner. The judgment of the district court is vacated and the _______ matter remanded for further proceedings consistent with this ________ opinion. -11- -11-