Thomas E. WHITE, Secretary of the Army, Appellant,

v.

DELTA CONSTRUCTION INTERNATIONAL, INC., Appellee.

No. 01–1253.

United States Court of Appeals, Federal Circuit.

March 12, 2002.

Clarke, U.S. Army Contract Appeals Division, of Arlington, VA.

Terrence M. O'Connor, of Alexandria, VA, argued for appellee.

Before BRYSON, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

■ In this appeal the government challenges the theory upon which the Armed Services Board of Contract Appeals ("Board") determined the damages resulting from the government's breach of a contractual provision obligating the government to provide a contractor with work of a specified minimum dollar amount. The Board awarded the contractor the difference between the dollar amount of work the government actually ordered and the total minimum dollar amount the contract obligated the government to order. We conclude that this was an impermissible basis for calculating damages, because it would put the contractor in a more favorable position than it would have been in if the government had performed rather than breached its contractual commitment. The proper basis for damages in this case is the loss the contractor suffered as a result of the government's breach, not the total amount it would have received without the breach. Accordingly, we vacate the decision of the Board and remand.

I

William F. Ryan, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellant. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director. Of counsel on the brief were LTC Richard B. O'Keefe, Jr. and Craig S.

A. The appellee Delta Construction International, Inc. ("Delta") entered into a contract with the Army to "furnish all labor, materials, equipment and transportation necessary to perform all work related to REPLACE ROTTEN LUMBER, GOVERNMENT FACILITIES, VARIOUS POSTS, PACIFIC AREA, PANAMA." The "base" period of the contract

was the last nine months of 1997, and the government had the option to extend the contract for two additional one-year periods. The government provided estimates of the dollar value of its anticipated total orders for each of these three periods, as well as estimates for particular items of the work. The contract warned that "Government estimated quantities may change drastically," and that "[t]he quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract."

The contract stated:

This is an indefinite-quantity, indefinite-delivery contract with a guarantee minimum of $200,000.00 and a maximum of $1,300,000.00 for the base and option periods.

The contract also provided that "[t]he Contractor shall posses sufficient capability to accomplish a daily rate of work in monetary value of a minimum of $3,000.00 when single or multiple delivery orders have been issued and accepted."

B. The government exercised its option to continue the contract for the first additional year, 1998, but declined to exercise its option for the second year. During 1998, Delta complained to the government about the lack of work and its idle work force. In May 1998, Delta submitted a claim to the contracting officer based on the government's failure to provide the guaranteed minimum amount of work. The contracting officer denied the claim because it "is premature and lacks merit." She stated: "It is premature to project that the Government will not order the guaranteed minimum. Furthermore, should the Government fail to order the guaranteed minimum, Delta Construction International, Inc. is not entitled to an adjustment on the basis of actual costs; the entitlement is the difference between

the actual dollar volume ordered and the guaranteed minimum of $200,000.00."

In January 1999, shortly after performance of the contract ended, Delta submitted to the Contracting Officer a claim for $125,965.46, which represented the difference between the dollar amount of the work the government had ordered and the guaranteed minimum of $200,000.00. A different Contracting Officer rejected the claim. He ruled that although

the Government did not order the guarantee minimum, nevertheless, the contractor is not entitled to be put in a better position than it would have been if it had performed and had to bear the expense of full performance. It is my decision that the contractor is entitled to recover a reasonable profit which it would have earned had he performed, based on the guarantee minimum, the overhead costs incurred on the guarantee minimum, and any reasonable, allocable, and allowable cost incurred based on guarantee minimum.

The government has provided a fair and reasonable consideration in issuing a unilateral modification (P00005 dated 12 March 99) to compensate the contractor in the amount of $11,216.00 for a reasonable profit, incurred overhead, and all reasonable cost based on the guarantee minimum.

On Delta's appeal, the Board

h[e]ld that Delta is entitled to recover the difference between $200,000 and the $86,323.07 in orders performed, or $113,676.93.

The Board stated that the difference between cases that permitted recovery of the difference between the guaranteed minimum and the work actually provided and those that limited damages to the contractor's actual losses was that in the former cases "the contractor both 'was required to and did maintain the capability

of providing the minimum services set in the contract' in return for the minimum guaranteed payment" but that in the latter cases "both of those factors were [not] present."

## II

■ A. The primary objective of damages for breach of contract is to place the non-breaching party "in as good a position pecuniarily as he would have been by performance of the contract." *Miller v. Robertson*, 266 U.S. 243, 257, 45 S.Ct. 73, 69 L.Ed. 265 (1924). As this court has stated, "[t]he general rule is that damages for breach of contract shall place the wronged party in as good a position as it would have been in, had the breaching party fully performed its obligation." *Mass. Bay Transp. Auth. v. United States*, 129 F.3d 1226, 1232 (Fed.Cir.1997) (citing prior cases of this court and its predecessor, the Court of Claims). Commentators and the Restatement of Contracts also have consistently recognized this principle. Arthur Linton Corbin, *Corbin on Contracts* § 992, at 5 (1964); E. Allan Farnsworth, *Farnsworth on Contracts* § 12.3, at 157 (2d ed. 1998); Charles T. McCormick, *Damages* § 137, at 561 (1935); Restatement (Second) of Contracts § 344 cmt. a (1979).

A corollary of that principle is that the non-breaching party is "not entitled to be put in a better position by the recovery than if the [other party] had fully performed the contract." *Miller*, 266 U.S. at 260, 45 S.Ct. 73. As the First Circuit stated the rule, the non-breaching party "should on no account get more than would have accrued if the contract had been performed." *DPJ Co. v. FDIC*, 30 F.3d 247, 250 (1st Cir.1994).

The Board's decision here violates these established principles by awarding Delta the full amount it would have received if the government had not breached the con-

tract. If the government had provided Delta with the $200,000 of work it had contractually guaranteed to provide, Delta would have been required to perform that work. To so perform, Delta would have incurred the additional costs of doing the additional work. Those costs would include (1) the lumber used to replace the rotten lumber it removed, (2) the labor used to do that work, (3) the transportation costs incurred and (4) Delta's overhead expenses allocable to the work. The Board's award, however, gives Delta the entire amount of the additional work the government would have provided—$113,676.93—without any reduction to reflect the additional costs Delta would have incurred in doing the work. The Board thus gave Delta more to compensate it for the breach "than would have accrued if the contract had been performed." *DPJ*, 30 F.3d at 250.

Without even referring to the foregoing principles, the Board concluded that this court's decision in *Maxima Corp. v. United States*, 847 F.2d 1549 (Fed.Cir.1988), required or justified the windfall it gave Delta. The Board viewed *Maxima* as establishing that when a contractor under an indefinite—quantity contract with a guaranteed minimum is required to be ready and able to handle a specified minimum amount of work (here $3,000 daily), the damages for the government's failure to provide the guaranteed minimum are the dollar amount the government guaranteed. As the Board explained in its opinion, it was this contractual readiness requirement in *Maxima* that distinguished that case from Board decisions that had limited the contractor's damages to its actual losses where it did not receive the guaranteed minimum.

Before this court Delta contends that "*Maxima* was binding precedent for the

Board and the Board faithfully followed precedent."

Both the Board and Delta misread *Maxima*.

Maxima Corporation entered into a contract to provide office and related services to the government for one year, which subsequently was extended to thirteen months. "Maxima agreed to perform a minimum amount of work, as requested, up to a stated maximum, and the Agency agreed to pay Maxima the annual 'Guaranteed Minimum' sum of $420,534." *Maxima*, 847 F.2d at 1551. The government did not provide Maxima with the guaranteed minimum amount of work. After the contract expired, "[t]he unused contract minimum was billed to the Agency on October 31, 1982, upon completion of the thirteenth month's work, and was paid in December 1982." *Id.*

> On November 16, 1983 the [government] advised Maxima that the contract was constructively terminated for convenience on October 31, 1982, based on the Agency's failure to have ordered the contractual minimum amount of services during the contract term. On appeal to the Board, the Agency was held liable only for the services actually ordered and received, at the rate set in the contract for the various services. Maxima was ordered to refund the balance of the contractual minimum that the Agency had paid the previous December.

*Id.*

This court reversed. The court stated that "[t]he issue on appeal ... is ... whether the termination clause of the contract can be asserted retroactively where guaranteed minimum quantities have not been ordered." *Id.* The concluding paragraph of the opinion stated:

> The government recognized at oral argument, as indeed it must, that no decision has upheld retroactive application of a termination for convenience clause to a contract that had been fully performed in accordance with its terms. The asserted partial constructive termination for convenience was improper. The Board's judgment is reversed, with instructions to enter judgment in favor of Maxima.

*Id.* at 1557.

All that the court held in *Maxima* was that the government could not retroactively terminate the contract for convenience after the contract had been fully performed. *Cf. Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1542 n.2 (Fed.Cir. 1996) ("*Maxima* stands for the proposition the Government cannot retroactively create a breach in order to change the Government's obligations under a completed contract."). The court did not purport to and did not decide any question concerning the proper measure of damages in that situation. The court discussed and rejected the various theories upon which the government sought to justify its retroactive termination and to uphold the Board's direction that the contractor refund to the government the balance of the contractual minimum. The court did so, however, only in connection with its conclusion that the retroactive termination was improper.

To be sure, the result of the court's decision in *Maxima* was that the contractor would retain the amount the government had paid it, representing the difference between the guaranteed minimum and the amount of work the government had ordered. That resulted, however, not because the court approved the basis of payment (it did not address that issue), but because the court found improper the method the government used to recapture the payment (retroactive termination for convenience). *Maxima* did not decide anything about the propriety of the basis

of calculating damages that the Board used in this case. Fairly and carefully read, *Maxima* cannot properly be understood to hold that where there is an indefinite-quantity contract with a guaranteed minimum and the contractor is obligated to be ready to perform a certain amount of work, the contractor is entitled to receive the amount by which the government falls short of the guaranteed minimum.

Apart from its mistaken reliance upon *Maxima*, the Board cited no authority or other principles that would support its theory that Delta's obligation to be able to perform $3,000 of work daily entitled it to receive as damages the entire shortfall of the guaranteed work. Although the $3,000 commitment was an important part of the contract, Delta's basic contractual obligation was, in the language of the contract, to "furnish all labor, materials, equipment and transportation necessary to perform all work related to REPLACE ROTTEN LUMBER, GOVERNMENT FACILITIES, VARIOUS POSTS, PACIFIC AREA, PANAMA." Upon the government's failure to provide the guaranteed minimum amount of work, Delta was entitled to recover the amount it lost as a result of that contract breach—no more and no less.

Where the parties intended to depart from the normal rules of damages and provide for special damages, they did so clearly and explicitly. Paragraph 1 of the "Special Contract Requirements" provides for liquidated damages of $65 per day if the contractor fails to complete the work within the contractually specified time. Nothing in the contract indicates, however, that the parties intended to depart from generally accepted principles for determining damages resulting from the government's breach of the provision governing minimum amounts of work.

■ C. Delta argues that the first contracting officer's earlier ruling that if the government breached its minimum work commitment, Delta's "entitlement is the difference between the actual dollar volume ordered and the guaranteed minimum of $200,000.00," should be given "great weight" as the government's own contemporaneous interpretation of the contract, made before litigation began.

■ "[I]n court litigation, a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. De novo review precludes reliance upon the presumed correctness of the decision." *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed.Cir.1994) (en banc). As this court previously had stated in *Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed.Cir.1987), quoted with approval in *Wilner*: "where an appeal is taken to a board or court, the contracting officer's award is not to be treated as if it were the unappealed determination of a lower tribunal which is owed special deference or acceptance on appeal." Delta cannot escape these principles by framing its argument not in terms of deferring to the contracting officer's decision but in terms of treating that decision as reflecting the government's contemporaneous interpretation of the contract.

D. At oral argument the government stated that the $11,216 the contracting officer awarded Delta constituted the damages to which Delta is entitled. As noted, the contracting officer described this amount as "fair and reasonable consideration ... to compensate the contractor ... for a reasonable profit, incurred overhead, and all reasonable cost based on the guarantee minimum." The government stated that this amount included all labor costs Delta incurred while remaining available to perform work the government should have given it.

The government may be correct, but on this record we cannot tell. We therefore conclude that the appropriate disposition of this case is to remand to the Board to award Delta the loss it suffered as a result of the government's breach of the contract, in accordance with the views set forth in this opinion.

## CONCLUSION

The decision of the Board is vacated, and the case is remanded to the Board to award Delta the loss it suffered as a result of the government's breach of the contract, in accordance with the views set forth in this opinion.

*VACATED AND REMANDED.*