# DOERING EQUIPMENT COMPANY & others[1] vs. JOHN DEERE COMPANY — A DIVISION OF DEERE & COMPANY.

No. 02-P-1652.

Norfolk. March 2, 2004. - September 14, 2004.

Present: KAFKER, KAPLAN, & MILLS, JJ.

*Practice, Civil,* Summary judgment, Motion in limine. *Consumer Protection Act,* Availability of remedy, Unfair act or practice, Damages. *Damages,* Consumer protection case, Breach of contract. *Contract,* Damages, Performance and breach.

In a civil action, the trial judge was not precluded from revisiting an issue not ruled on by a motion judge. [854]

Statement of the standard of review applicable to a trial court judge's decision granting a motion in limine in a civil action. [854]

In a civil action alleging breach of the covenant of good faith and fair dealing and violation of G. L. c. 93A, brought by a plaintiff who had entered into a distributorship agreement with the defendant manufacturer, the trial judge properly granted a pretrial motion excluding the distributor's claims for damages, where the plaintiff failed to articulate a viable theory of damages for its claimed losses. [854-859]

CIVIL ACTION commenced in the Superior Court Department on December 31, 1996.

Motions for summary judgment were heard by *Ralph D. Gants,* J., and the case was heard by *John C. Cratsley,* J.

*Vincent J. Pisegna* (*Hugh Dun Rappaport* with him) for the plaintiffs.

*Thomas S. Vangel* (*Michael P. Connolly* with him) for the defendant.

KAFKER, J. Doering Equipment Company (Doering) had lost money every year on its contract to act as a distributor for John Deere Co. (Deere) golf and turf products. When Deere insisted that Doering purchase a large number of "turf gators," a new

---

[1]Donald R. Doering and Barbara H. Doering.

multipurpose utility vehicle that Doering thought would sell poorly, Doering terminated the contract and sought to recover its losses incurred during the previous three years. It claimed that the demand that it purchase the turf gators breached the covenant of good faith and fair dealing, and constituted an unfair trade practice in violation of G. L. c. 93A. Concluding that Doering's operating losses were not causally connected to Deere's turf gator demand, and that Doering could not present a viable theory of damages for the claimed losses, the trial judge granted a pretrial motion excluding Doering's claims for damages. On appeal, Doering argues that the operating losses are recoverable as reliance damages. We affirm.

*Facts and prior proceedings.* Doering, which sold and installed trucking equipment, entered into a distributorship agreement in 1993 with Deere for Deere's golf and turf product line. Under the agreement, Doering was authorized to purchase equipment with floor plan financing (i.e., deferring payment until the time of sale to a customer), and it agreed to provide a sufficient staff adequately trained to carry out its obligations under the agreement. Deere could terminate immediately for cause for certain defaults, including the failure to pay for goods when due, or to provide sufficient staff. It could also terminate upon 180 days notice if Deere determined that the distributor's area[2] did not afford sufficient sales potential or if Deere "believe[d] the [d]istributor [was] not fulfilling the requirements of his appointment despite the opportunity to correct or take appropriate action toward . . . deficiencies in . . . performance or operations" for which it had received notice. Doering, in contrast, could only terminate upon 180 days written notice unless such termination was by mutual consent. The agreement specifically provided that upon termination for whatever reason, "neither party is entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales or other losses occasioned by termination or cancellation of this Agreement," except respecting obligations resulting from goods already delivered to Doering.

In 1996, Deere began to complain of understaffing by Doering, and demanded another salesperson. Doering responded that

---

[2]The area included most of Massachusetts.

it intended to add one, but only after its current sales force began to pay for itself. Also, by October 17, 1996, Doering had repaid Deere only $20,000 of $100,000 which had been mistakenly credited to it over the summer. Deere had prepared a termination notice, but had not informed Doering about it.

At a meeting on October 17, 1996, Deere allegedly told Doering that it must purchase forty-four turf gators and add a salesperson, and that both were nonnegotiable requirements. The agreement provided that Doering "maintain an inventory of goods in proportion to sales possibilities." Doering replied that customer feedback indicated that no one wanted the turf gators and that they were overpriced, but Deere was firm. Doering also repeated that it could not afford another salesperson, but again Deere was firm. One week later, on October 24, 1996, Doering notified Deere in writing that it was terminating the distributorship agreement. Deere accepted the letter of termination, although it denied that it had required Doering to order a specific number of turf gators.

Doering brought suit against Deere, seeking (as amended) declaratory relief and alleging claims of violation of G. L. c. 93A, § 11, breach of good faith under G. L. c. 106, §§ 1-203 and 2-103(1)(*b*), breach of the covenant of good faith and fair dealing, deceit and misrepresentation, promissory estoppel, constructive termination, and constructive termination of a "dealer agreement" in violation of G. L. c. 93G, § 2. Doering sought recovery of approximately $500,000, consisting of its operating losses for its golf and turf business over the last three years ($139,865 in 1996; $150,720 in 1995; and $172,783 in 1994) and attorney's fees. Doering did not seek recovery for lost profits. Deere counterclaimed for monies previously owed.

A Superior Court judge granted summary judgment for Deere on so much of Doering's amended complaint as was predicated on statements by Deere that allegedly induced Doering to become a distributor, ruling that such claims failed because the statements were mere expressions of belief or opinion, and Doering's reliance on them was not reasonable.[3] As for claims arising out of the meeting on October 17, 1996 (i.e., that Deere

---

[3]The statements were that (1) Deere had been poorly represented previously; (2) Deere had "an acceptable and complete product line" and would

61 Mass. App. Ct. 850 (2004)                     853

Doering Equipment Company *v.* John Deere Company — A Division of Deere & Company.

made unreasonable demands upon Doering respecting the turf gators), the judge concluded that summary judgment was premature as there were factual issues respecting whether Deere had violated the covenant of good faith and fair dealing and G. L. c. 93A. He also allowed summary judgment on the constructive termination count as not presenting a cause of action apart from the c. 93A and breach of the implied covenant of good faith and fair dealing claims. Finally, he allowed summary judgment on the G. L. c. 93G claim as arising before the effective date of the statute.[4] In a footnote, the motion judge stated that the court "expressly is not deciding whether damages from constructive discharge are properly cognizable in this case, especially considering the express limitation on the elements of permissible damages set forth in the Distributor's Agreement." Doering has not challenged the summary judgment decision on appeal.

The trial judge allowed Deere's motion in limine to preclude Doering from introducing evidence of damages, effectively ending Doering's case. He considered the contract documents, Doering's "statement of losses on Deere's Golf and Turf products line and . . . the summary judgment record." He concluded that Doering had not articulated any legally cognizable theory of damages, in that there was no causal connection between its damage claims and the demands related to the meeting of October 17, 1996. In so concluding, the judge ruled that the damages Doering sought were related to the claims on which the motion judge had already allowed summary judgment, rather than to any surviving claims arising out of the October 17 meeting.

After trial on its counterclaim, Deere recovered damages of $118,467.34, plus attorney's fees of $70,000 (amended judgment on counterclaim). Doering has not appealed from the judgment on the counterclaim, and it is not at issue except insofar as it bears on Doering's argument that it was wrongly

provide adequate support; and (3) Doering would be able to achieve profitability within three years.

[4]The judge denied Doering's motion for partial summary judgment, and granted summary judgment to Deere as to liability (contingent upon Deere's submission of a certified record of its filing with the Secretary of the Commonwealth in accordance with G. L. c. 181, § 4) on the counterclaim.

prevented from introducing evidence on its defense of setoff. Doering has appealed the decision allowing the motion in limine, asserting that the trial judge "overruled" the motion judge as to the availability of damages arising out of the October 17, 1996, meeting, and claiming error in the trial judge's rejection of its c. 93A and breach of good faith claims and its affirmative defense of setoff.

*Discussion.* We begin with the procedural arguments. First, we reject Doering's contention that the trial judge improperly overruled the motion judge regarding the viability of the damages claim. Although not perfectly clear, the motion judge's footnote, regarding the permissible scope of damages as set forth in the parties' "Distributor's Agreement," indicates that he made no determination on this issue. Regardless, the trial judge was not precluded from revisiting the issue even if the motion judge had ruled on the question. *Barron* v. *Fidelity Magellan Fund,* 57 Mass. 507, 519 (2003) ("Even if the two motions [for summary judgment] addressed the same issue, until final judgment, a judge may entertain a motion on which another judge has previously ruled").

We next consider the standard of review applicable to the decision to allow the motion in limine. Doering contends that the trial judge applied a rule 12(b)(6) standard regarding the viability of the damages claim (Mass.R.Civ.P. 12[b][6], 365 Mass. 754 [1974]), while Deere claims that the trial judge treated the motion in limine as a second summary judgment motion. Based on his explicit consideration of the "summary judgment record," and the statement of losses that was not included in the complaint, we consider his decision as an allowance of summary judgment. We therefore "take the evidence in the light most favorable to the nonmoving party to determine whether all material facts had been established and whether [Deere] was entitled to judgment as a matter of law." *Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.,* 438 Mass. 459, 464 (2003).

Doering has consistently sought to recover all its operating losses, but its theory of recovery has an elusive, chameleon-like quality. On appeal, Doering appears to have settled generally on a reliance theory of damages. It also identifies the turf gator

demand as the breach or unfair trade practice for which it seeks recovery. The relationship between the breach and the damages, however, is unclear.

As the trial judge recognized, there appears to be no causal connection between the prior years' losses and the demand that Doering purchase the turf gators. See, e.g., *Massachusetts Farm Bureau Fedn., Inc.* v. *Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 730 (1989) ("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery"). See *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 611-612 n.2 (1994) (measure of contract reliance damages is "similar to the tort standard of actual, or out-of-pocket, loss proximately suffered"). See also *Sullivan* v. *O'Connor*, 363 Mass. 579, 588 n.6 (1973). The damages sought had been sustained while the contract was being performed according to its terms, before the turf gator demand was made.[5] According to the damages figures submitted by Doering, the agreement was a losing proposition from the outset. The damages were, therefore, caused by the bad bargain itself, not the October breach. The breach may have led Doering to terminate the contract, but it did not cause the contract losses, which Doering had already incurred.

Doering seems to recognize the unfavorable nature of the bargain, as it makes no argument that the breach prevented it from continuing the contract and recouping the accrued losses. See *Mistletoe Express Serv.* v. *Locke*, 762 S.W.2d 637, 638 (Tex. App. 1988). Doering also has not generally argued that the breach deprived it of the benefit of the bargain. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 472 (1991); *VMark Software, Inc.* v. *EMC Corp.*, *supra* at 611 n.2, citing *John Hetherington & Sons, Ltd.* v. *William Firth Co.*, 210 Mass. 8, 21 (1911) ("[t]he long-established general rule for breach of contract recovery in Massachusetts is that the wronged party should receive the benefit of his bargain, i.e., be placed in the

_____

[5]Doering has not identified or argued, at least since the first summary judgment motion, any breach by Deere of the contract or the implied covenant of good faith occurring during the prior three-year period. Furthermore, it certainly has not alleged a breach during that three-year period causally connected to these losses, and not covered by the limitation of damages provision in the contract.

same position as if the contract had been performed"). See also Restatement (Second) of Contracts § 347 (1981) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed").

Relying on *VMark Software* v. *EMC Corp.*, *supra* at 611 n.2, 625, and the Restatement (Second) of Contracts § 349 (1981), Doering contends instead that it is entitled to recover its operating losses for the three years prior to the "constructive termination" of the contract as "reliance" damages. As this court stated in *VMark*, "in an appropriate case, Massachusetts law permits, as an alternative to such 'expectation' damages, the recovery of 'reliance' damages, i.e., expenditures made in reliance upon a contractual obligation that was not performed." *VMark Software* v. *EMC Corp.*, *supra* at 611 n.2. See *Sullivan* v. *O'Connor*, *supra* at 583-585; *Lord's & Lady's Enterprises, Inc.* v. *John Paul Mitchell Sys.*, 46 Mass. App. Ct. 262, 269 (1999).

In *VMark*, unlike this case, there was a direct causal connection between the expenditures sought by the injured party as reliance damages and the contractual obligations that were not performed. There, the injured party purchased computer hardware from a third company in "reliance on VMark's supplying it with a software product that would be fully functional in conjunction with that hardware." *VMark Software, Inc.* v. *EMC Corp.*, *supra* at 612. We concluded that the hardware would not have been purchased "but for VMark's misleading representations." *Id.* at 619. Here, in contrast, the motion judge, in allowing summary judgment, rejected Doering's contention that it could prove that it entered into the contract and incurred the expenses based on various misrepresentations. Doering does not challenge this decision on appeal. The lack of a causal connection between the claimed breach (or unfair act) and the losses is fatal to Doering's claims.

Furthermore, as provided in the Restatement (Second) of Contracts § 349, the "injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance," but "less any

loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed." See *L. Albert & Son* v. *Armstrong Rubber Co.*, 178 F.2d 182, 189 (2d Cir. 1949) (where Hand, J., writing for the court, stated, "[o]n principle therefore the proper solution would seem to be that the promisee may recover his outlay in preparation for the performance, subject to the privilege of the promisor to reduce it by as much as he can show that the promisee would have lost, if the contract had been performed").[6] In the instant case, Doering is seeking to recover expenditures made in preparation for performance or during performance, but has also demonstrated, through its own submissions, that the contract, as performed, had been a losing proposition since inception, separate and apart from the breach. In fact, the operating losses for the contract, while being performed by both parties, are exactly what Doering seeks to recover. We are, therefore, in the rare position of being able to judge with accuracy "what the fate of the venture would have been had it not been interrupted" by the defendant's breach. Fuller & Perdue, The Reliance Interest in Contract Damages, 46 Yale L.J. 52, 79 (1936). See *L. Albert & Son* v. *Armstrong Rubber Co.*, *supra* at 189 ("It is often very hard to learn what the value of the performance would have been").

If Doering recovered its losses as requested, it would be in a better position than if the contract had been performed. This would violate the fundamental principle first articulated by Professor Fuller and thereafter adopted by Judge Learned Hand in *Albert & Son* v. *Armstrong Rubber Co.*, *id.* at 191, the Restatement (Second) of Contracts, and this court in *Lord's & Lady's Enterprises, Inc.* v. *John Paul Mitchell Sys.*, 46 Mass. App. Ct. at 270, that "[w]e will not in a suit for reimbursement for losses incurred in reliance on a contract knowingly put the plaintiff in a better position than he would have [been in] . . .

---

[6]We recognize that a "party standing in breach cannot insist on mathematical precision in the measurement of damages, and may expect some lack of sympathy when he claims that the loss would have been suffered even if breach had not occurred." *Gilmore* v. *Century Bank & Trust Co.*, 20 Mass. App. Ct. 49, 55 (1985). Therefore, the burden is placed on the breaching party to establish the losses with "reasonable certainty." Restatement (Second) of Contracts at § 349.

had the contract been fully performed." Fuller & Perdue, *supra* at 79. See *Productora e Importadora de Papel* v. *Fleming,* 376 Mass. 826, 839 (1978) (damage award "should be reduced, even to extinction, by the expenses that the breach" allowed the injured party to avoid). See also 3 Dobbs, Law of Remedies § 12.3(2), at 56-57 ("To allow reliance recovery in excess of the appropriate measure of expectancy would mean that the plaintiff would be better off by reason of the breach and recovery than he would have been upon full performance").[7]

We also reject Doering's arguments that it suffered a G. L. c. 93A, § 11, violation, that is, a loss of money or property as a result of an unfair or deceptive act or practice. As previously explained, there is nothing in the record to establish that Deere's insistence that Doering purchase forty-four turf gators, the basis of the c. 93A claim, caused Doering any monetary damages apart from legal fees. Moreover, Doering was not "forced to incur" legal fees as a result of litigation initiated against it. See *Tech Plus, Inc.* v. *Ansel,* 59 Mass. App. Ct. 12, 21 (2003). Compare *Columbia Chiropractic Group, Inc.* v. *Trust Ins. Co.,* 430 Mass. 60, 63 (1999) ("If a violation of G. L. c. 93A, § 11, forces another to incur attorney's fees, those fees are a loss of money or property and may be recovered as G. L. c. 93A damages"). Nor was it forced to incur fees to seek to enforce the contract that it claims was constructively terminated by the c. 93A violation. Rather, it brought suit to recover damages that we have concluded are unrelated to the unfair act or practice that forms the basis of the c. 93A claim. The expenditure of this type of attorney's fees does not represent a loss of money or property within the meaning of c. 93A, § 11.

Finally, Doering relies on G. L. c. 106, § 2-715(1), to recover its operating losses as "any reasonable expense incident" to Deere's breach of its obligation of good faith in its performance or enforcement of the contract. By the express terms of § 2-715(1), incidental damages are those resulting from the breach.

---

[7]As the parties have not addressed the issue, and it is unnecessary to our decision, we do not address whether the contract's limitation of damages provision provides additional support for the rejection of these claims, particularly to the extent they sound in contract and not tort. See note 5, *supra*; *Canal Elec. Co.* v. *Westinghouse Elec. Corp.,* 406 Mass. 369, 379 (1990).

They may include, for example, "such costs as 'expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected.' " *Fortin* v. *Ox-Bow Marina, Inc.*, 408 Mass. 310, 321 n. 4 (1990), quoting from G. L. c. 106, § 2-715(1). The damages must therefore, at a minimum, bear some relationship to the breach. As there is no causal connection between the October turf gator demand and the operating losses, these losses cannot be recovered pursuant to G. L. c. 106, § 2-715(1).

*Judgment affirmed.*