*1374
 
 SCHALL, Circuit Judge.
 

 This suit arises from two spare parts requirements contracts between the United States Army Communications & Electronics Command (“CECOM”) and Hi-Shear Technology Corporation (“Hi-Shear”). Following a trial, the Court of Federal Claims held that CECOM had breached the contracts by negligently overestimating in its invitations for bids (“IFBs”) the number of spare parts that would be required during the contract period.
 
 Hi-Shear Tech. Corp. v. United States, 53
 
 Fed.Cl. 420, 422 (2002). The court awarded Hi-Shear damages in the amount of $17,793.56, plus interest.
 
 Id.
 
 at 445;
 
 Hi-Shear Tech. Corp. v. United States, 55
 
 Fed. Cl. 418 (2003) (denying Hi-Shear’s motion for reconsideration).
 

 On appeal, Hi-Shear argues that our decision in
 
 Rumsfeld v. Applied Cos., Inc.,
 
 325 F.3d 1328 (Fed.Cir.),
 
 cert. denied,
 
 — U.S. -, 124 S.Ct. 462, 157 L.Ed.2d 370 (2003), requires reversal and the award of damages in the form of an equitable adjustment in contract price. Because we conclude that the Court of Federal Claims employed a reasonable method to calculate damages, and because that method is not inconsistent with our decision in
 
 Applied Cos.,
 
 we affirm the court’s decision.
 

 BACKGROUND
 

 I.
 

 The two requirements contracts called for Hi-Shear to provide spare parts for the AN/TTC/TYC-39 circuit switch (“T-39 Circuit Switch”).
 
 [1]
 
 The T-39 Circuit Switch has over 3,000 individual spare parts, approximately 1,100 of which were managed by CECOM in the procurement at issue in this case.
 
 Hi-Shear,
 
 53 Fed. Cl. at 423. In connection with the procurement, CECOM identified the particular spare parts that were appropriate for multi-year contracts. It then grouped those parts into acquisition packages based on similarity of materials and components.
 
 Id.
 
 at 424. Once the parts were allotted between acquisition packages, CECOM calculated the quantities that would be required for each spare part within each package.
 
 Id.
 
 For pricing purposes, each part was assigned one of three quantity ranges for each year of the contract.
 
 Id.
 
 Because of well recognized economies of scale, CECOM expected bidders to offer a different price for each quantity range.
 
 Id.; see, e.g., Crown Laundry & Dry Cleaners, Inc. v. United States,
 
 29 Fed. Cl. 506, 524 (1993) (“[T]he work estimate provided the basis for the bid price submitted to the government. The larger the number of work items listed in the work estimates, the lower the cost allocation per item of work performed. The lower the number of work items listed in the work estimates, the higher the cost allocation per item of work performed.”).
 

 The acquisition packages eventually matured into IFBs. Each IFB described a one-year requirements contract, with a government option to extend the contract for up to four years. For each line item, each IFB set forth three estimated quantity ranges (Ranges A, B and C), as well as a specific estimated contract quantity.
 
 Hi-Shear, 53
 
 Fed. Cl. at 425. In the case of each line item, the estimated contract quantity corresponded to the “lower end of the middle” quantity range for the item.
 
 Id.
 
 The IFBs also stated that, in the case of each line item, bidders were to provide unit prices for each of the quantity ranges for each of the five possible ordering years.
 
 Id.
 
 at 424. Hi-Shear submitted bids in response to two IFBs. In doing so, in the case of each line item, it bid the
 
 *1375
 
 same price for each quantity range for all five years, contrary to what CECOM had expected.
 
 Id.
 
 at 425. Hi-Shear asserted that it priced its bids based on the total estimated requirements for each contract, rather than based on the quantity ranges in the IFBs.
 
 Id.
 
 In due course, Hi-Shear was awarded the two contracts for which it bid, contract F301 and contract F305. Ultimately, contract F301 covered nine line items, while contract F305 covered seven fine items.
 

 As it turned out, the requirements estimates in the IFBs failed to take into account two important factors of which CE-COM was aware, or should have been aware.
 
 Id.
 
 at 432. First, CECOM failed to consider that the level of need for parts would be affected by an increase in the number of parts on hand based on new incentives for field units to return defective or damaged parts.
 
 Id.
 
 Second, the requirements estimates did not take into account the number of parts on hand at the time the estimates were made.
 
 Id.
 
 As a result of neglecting this information, CE-COM used the base average monthly demand, rather than the
 
 net
 
 base average monthly demand for the parts involved in the procurement.
 
 Id.
 
 at 424. As a result, the spare parts requirements set forth in the IFBs, and thereafter stated in the contracts, were overestimated.
 

 Subsequently, although CECOM extended both contracts twice, it only issued one order under contract F301 and two orders under contract F305.
 
 Id.
 
 at 425. The order under contract F301 was for $153,300.00 worth of spare parts, which represented less than twelve percent of the total estimated quantity of parts for that contract. The total value of orders under contract F305 was $92,805.97, representing less than twenty percent of the total estimated quantity of parts for that contract.
 

 When CECOM chose not to exercise any options after the second option year under either contract, Hi-Shear filed certified claims with the contracting officer.
 
 Id.
 
 at 425, 427. Hi-Shear claimed breach of contract damages in the amount of $310,319 under contract F301 and $53,330 under contract F305.
 
 Id.
 
 In its claims, Hi-Shear sought to recover the fixed overhead and general and administrative (“G
 
 &
 
 A”) costs that it alleged it would have incurred, as well as the gross profit it stated it would have made, under each contract had the government purchased all of the estimated requirements for the base year and each of the four option years stated in the IFBs.
 
 Id.
 
 at 426.
 

 II.
 

 After the contracting officer denied its claims, Hi-Shear timely filed suit in the Court of Federal Claims under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (2000). Following a trial, the court held that CECOM had breached the two requirements contracts by negligently overstating, in the IFBs, its estimated requirements for spare parts. However, the court disagreed with Hi-Shear’s damages assessment and awarded only $17,793.56 in total damages for both contracts.
 

 Before the Court of Federal Claims, Hi-Shear sought damages spread over the base year and the four option years of each contract, even though CECOM only extended each contract twice.
 
 Hi-Shear,
 
 53 Fed. Cl. at 435. Relying on
 
 Dangfeng Shen Ho v. United States,
 
 49 Fed. Cl. 96, 107 (2001),
 
 aff'd,
 
 30 Fed.Appx. 964 (Fed. Cir.2002), the Court of Federal Claims rejected Hi-Shear’s claim for damages based upon the unexercised option years because it determined that CECOM’s failure to exercise the additional options was not in bad faith.
 
 Hi-Shear,
 
 53 Fed. Cl. at 436. The court stated: “[PJlaintiff may not re
 
 *1376
 
 cover for any items which might have been ordered during the fourth and fifth option years even if the government incorrectly estimated its contract requirements.”
 
 Id.
 
 The court then turned to Hi-Shear’s claim insofar as it related to the base year and the first two option years under each contract.
 

 As far as the base year and the exercised option years were concerned, Hi-Shear asserted that it was entitled to “the profit and burden that it anticipated in its bid and would have earned if the Government’s representations of its requirements had been true.”
 
 Id.
 
 at 438. Specifically, as it had before the contracting officer, Hi-Shear sought to recover the profit it would have made under the contracts if the government had ordered the quantity of spare parts estimated in the IFBs, plus fixed overhead and G & A costs.
 
 Id.
 

 The Court of Federal Claims ruled first that Hi-Shear was not entitled to anticipated profits on unordered parts. The court stated: “A plaintiff that has proven that the government was negligent in estimating contract requirements, however, still bears the risk of variances in the government’s requirements due to factors other than the government’s negligence .... ”
 
 Id.
 
 To determine Hi-Shear’s damages, the court instead resorted to what has been referred to as the “jury verdict” method for approximating damages. The “jury verdict method” is “most often employed when damages cannot be ascertained by any reasonable computation from actual figures.”
 
 Dawco Construction, Inc. v. United States,
 
 930 F.2d 872, 880 (Fed.Cir.1991),
 
 overruled on other grounds by Reflectone, Inc. v. Dalton,
 
 60 F.3d 1572 (Fed.Cir.1995). “Before adopting the ‘jury verdict method,’ the court must first determine three things: (1) that clear proof of injury exists; (2) that there is no more reliable method for computing damages; and (3) that the evidence is sufficient for a court to make a fair and reasonable approximation of damages.”
 
 Id.
 

 The Court of Federal Claims started from the premise that Hi-Shear’s damages recovery should be based upon “what [CE-COM] would have estimated its contract requirements to be if it had not been negligent.”
 
 Hi-Shear,
 
 53 Fed. Cl. at 438. The court reasoned that Hi-Shear was “due a percentage of the portion of the difference between the actual orders and the estimated contract requirements attributable to the government’s failure to consider net base average monthly demand and assets on hand.”
 
 Id.
 
 To calculate Hi-Shear’s damages, the court first determined what CECOM would have estimated in the IFBs had it not been negligent. To accomplish this, the court identified and addressed the errors that led CECOM to its faulty estimates; Mainly, this included determining net base average monthly demand using the formula that government witnesses testified CECOM should have used when developing its estimates. With the proper demand established, the court then generated new estimates of required parts.
 
 See id.
 
 at 438-42. The reconstructed estimates were lower than the original negligent estimates, but greater than the government’s actual orders. Using Hi-Shear’s pricing for the original contract, the court then computed what the total price of each contract would have been based on the recomputed totals.
 
 Id.
 
 at 441. The court used these new contract totals as the basis for determining its damages award.
 

 As noted, Hi-Shear’s claims included (1) fixed overhead relating to the unordered quantities and (2) gross profit related to the unordered quantities, including G & A costs.
 
 Id.
 
 at 442. In assessing these claims, the Court of Federal Claims relied, in part, on a government audit by the
 
 *1377
 
 Defense Contract Audit Agency (“DCAA”). The DCAA audit accepted Hi-Shear’s claim for unrecouped fixed overhead costs.
 
 Id.
 
 However, both Hi-Shear’s claims and the DCAA audit based the amount of fixed overhead recoverable by Hi-Shear on the assumption that Hi-Shear was entitled to all of the estimated contract requirements for the base year and all four option years. The Court of Federal Claims concluded that Hi-Shear was “only entitled to a computation based on the quantities the government would have ordered had it accounted for unserviceable returns and only during the base year and the two executed option years.”
 
 Id.
 
 Accordingly, the court only awarded fixed overhead costs related to the quantities the government would have ordered had it ordered all of its properly prepared estimates, and only for the base year and the two exercised option years, less the fixed overhead already covered by CECOM’s actual orders.
 
 Id.
 
 This amounted to $12,175.23 for contract F301 and $1,946.64 for contract F305, for a total of $14,121.87. '
 

 With respect to the gross profit related to unordered quantities, the Court of Federal Claims again turned to the DCAA audit. The DCAA concluded that “based on our analyses, the contractor would have experienced a loss on both of these contracts even if all contract requirements had been ordered.”
 
 Id.
 
 at 444. The court noted that “[p]laintiff has presented no evidence that, if capitalized and amortized, the engineering costs would have been sufficiently covered by the orders the court has found it entitled to, namely, the orders the government would have estimated had it accounted for unserviceable returns over the base year and the two executed contract years.”
 
 Id.
 
 Thus, concluded the court, “plaintiff has failed to prove that it is entitled to lost profits.”
 
 Id.
 
 Consequently, Hi-Shear was not awarded any lost profits.
 

 Finally, the Court of Federal Claims addressed Hi-Shear’s claim for G & A costs. The DCAA audit agreed with Hi-Shear’s estimate that its G & A rate was twenty-six percent. The court noted that “Hi-Shear did not incur ... any labor or material costs on the contracts for items that were not ordered. Nor has it claimed non-fixed overhead costs.”
 
 Id.
 
 Therefore, reasoned the court, “Hi-Shear may only recover G
 
 &
 
 A costs related to fixed overhead,” which amounted to twenty-six percent of the fixed overhead to which Hi-Shear was entitled, or $3,671.69.
 
 Id.
 
 The total damages award was thus $17,793.56, plus interest pursuant to 41 U.S.C. § 611 from May 12, 1997. Thus, the court awarded Hi-Shear the fixed overhead and G & A costs that it would have incurred during the base year and the first two option years if the government had ordered the quantity of spare parts that CECOM would have estimated in the IFBs if it had properly prepared its estimates. Following the denial of its request for reconsideration, Hi-Shear timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
 

 ANALYSIS
 

 I.
 

 The sole issue before us is whether the Court of Federal Claims erred in arriving at High Shear’s damages award: We review a damages award by the Court of Federal Claims for an abuse of discretion.
 
 Hughes Communications Galaxy, Inc. v. United States,
 
 271 F.3d 1060, 1065 (Fed.Cir.2001). A court abuses its discretion when “(1) the court’s decision is clearly unreasonable, arbitrary or fanciful; (2) the decision is based upon an erroneous construction of the law; (3) the trial court’s factual findings are clearly erroneous; or (4) the record contains no evidence upon which the [trial] court could have
 
 *1378
 
 rationally based its decision.”
 
 Air Land Forwarders, Inc. v. United States,
 
 172 F.3d 1338, 1341 (Fed.Cir.1999).
 

 On appeal, Hi-Shear argues that the decision of the Court of Federal Claims in this case is contrary to
 
 Applied Cos.,
 
 where we stated that an adjustment in contract price is the proper way for a contractor to recover damages for breach of a requirements contract resulting from negligently prepared government estimates. 325 F.3d at 1340. According to Hi-Shear, the Court of Federal Claims erred as a matter of law, and thus abused its discretion, by not following
 
 Applied Cos.,
 
 but instead taking as the starting point for the damages award “what the government would have estimated its contract requirements to be if it had not been negligent.”
 
 Hi-Shear,
 
 53 Fed. Cl. at 438. Hi-Shear contends that if its damages are calculated on the basis of an equitable adjustment, it will be entitled to a recovery in the amount of $438,336.
 

 II.
 

 We do not agree with Hi-Shear that the decision of the Court of Federal Claims in this case is contrary to
 
 Applied Cos.
 
 In
 
 Applied Cos.,
 
 the Defense Logistics Agency (“DLA”) entered into a requirements contract to purchase refrigerant storage cylinders from Applied Companies (“Applied”). There were two types of refrigerant cylinders — one for R-12 refrigerant and one for R-114 refrigerant. In its initial request for proposals (“RFP”), DLA estimated that it would require 62,945 R-12 cylinders and 56,550 R-114 cylinders. Prior to the contract award, DLA personnel realized that they had greatly overestimated the number of cylinders required. This information, however, was not communicated to Applied or any of the other offerors. Applied was awarded the contract. Eventually, DLA ordered only about ten percent of its estimated requirements before terminating the contract for convenience, apparently prior to delivery of any cylinders.
 
 Applied Cos.,
 
 325 F.3d at 1331-33.
 

 Applied Cos.
 
 came to us as an appeal by the government from a decision of the Armed Services Board of Contract Appeals (“ASBCA” or “Board”). In its decision, the ASBCA held that the DLA had breached its contract with Applied by negligently failing to inform Applied that the estimates in the. RFP were inaccurate.
 
 Id.
 
 at 1330. The Board also stated that, during quantum proceedings, Applied could seek to recover the profits it anticipated making on the total number of cylinders that DLA estimated in the RFP.
 
 Id.
 
 We affirmed the Board’s ruling on liability. In so doing, we held that “to the extent that a government estimate is inadequately or negligently prepared, its inclusion without correction in a solicitation or contract constitutes a misrepresentation that, whether deliberate or unintentional, amounts to a breach of contract.”
 
 Id.
 
 at 1335 (citing
 
 Womack v. United States,
 
 182 Ct.Cl. 399, 389 F.2d 793, 800 (1968)). Liability was the only issue decided by the ASBCA. However, because the Board observed in dictum that Applied “is entitled to be made whole, and here that includes anticipatory profits to the extent they can be proved,” we examined the type of damages Applied was entitled to recover.
 
 Id.
 
 (“The Board’s statement regarding quantum suggests that it is appropriate for us to provide guidance regarding the proper measure of Applied’s recovery.” citing
 
 Fla. E. Coast Ry. Co. v. United States,
 
 228 Ct.Cl. 647, 660 F.2d 474, 475 (Ct.Cl.1981)).
 

 We first noted the general rule that “when there has been a breach of contract, the non-breaching party is entitled to an award of damages that will place it ‘in as good a position as [it] would have been had the breaching party fully performed.’ ”
 
 Id.
 
 at 1336 (quoting
 
 Wells Fargo Bank, N.A.
 
 
 *1379
 

 v. United States,
 
 88 F.3d 1012, 1021 (Fed. Cir.1996)). We then stated that “the logical starting point for a damages analysis is an understanding of the breaching party’s obligations under the contract.”
 
 Id.
 
 In that regard, we pointed out that a requirements contract “calls for the government to fill all its actual requirements for specified supplies or services during the contract period by purchasing from the awar-dee, who agrees to provide them at the agreed price.”
 
 Id.
 
 (quoting
 
 Medart, Inc. v. Austin,
 
 967 F.2d 579, 581 (Fed.Cir. 1992)). We then explained that where the government enters into a requirements contract, and has requirements under the contract, but does not use the contractor to satisfy those requirements and instead diverts business away from the contractor, the contractor is entitled to recover lost profits on the diverted business, provided it can prove them according to the requirements of
 
 California Federal Bank v. United States,
 
 245 F.3d 1342 (Fed.Cir.2001).
 
 [2]
 

 Applied Cos.,
 
 325 F.3d at 1339. We noted that the critical point is that the government’s breach of its obligation to fill all of its actual requirements by purchasing from the contractor “has the effect of taking away from the contractor the opportunity to earn a profit.”
 
 Id.
 

 However, where the breach is solely in the form of inadequately or negligently prepared estimates, anticipatory lost profits are not available for the overestimated, unordered quantities.
 
 Id.
 
 This is because in order to recover anticipatory profits, it must be “definitely established” that without the government’s breach there would have been a profit.
 
 Cal. Fed. Bank,
 
 245 F.3d at 1349. We stated that Applied could not meet that requirement because if DLA had discharged its duty by properly preparing the cylinder estimates, or if it had told offerors before contract award that the estimates were inaccurate, Applied would not have expected to sell, and would not have sold, the number of R-12 and R-114 cylinders estimated in the RFP. “In other words,” we said, “the profit Applied attempts to recover in the form of lost profits for anticipated sales would not ‘definitely’ have existed but for DLA’s breach.”
 
 Applied Cos.,
 
 325 F.3d at 1340. We further stated that to allow damages in the form of lost profits for DLA’s breach “would squarely conflict with the rule that a non-breaching party ‘should on no account get more than would have accrued if the contract had been performed.’ ”
 
 Id.
 
 (quoting
 
 White v. Delta Constr. Int’l, Inc.,
 
 285 F.3d 1040, 1043 (Fed.Cir.2002)).
 

 After determining that Applied was not entitled to recover anticipatory lost profits, we suggested as an alternate approach the method used in
 
 Everett Plywood v. United States,
 
 190 Ct.Cl. 80, 419 F.2d 425 (1969).
 
 Applied Cos.,
 
 325 F.3d at 1340. In
 
 Everett Plywood,
 
 the government incorrectly estimated, in a prospectus for a timber sale contract, the total amount of timber that would be available to be harvested from a specified forest area. 419 F.2d at 429. When the timber was actually harvested by Everett Plywood (“Everett”), it was substantially less than what had been estimated.
 
 Id.
 
 In Everett’s suit for breach of contract based upon the faulty timber estimate, the Court of Claims determined that the effect of the incorrect estimate “was to increase the plaintiffs expected overall average cost per M board feet.”
 
 Id.
 
 at 433. As a result, Everett “suffered damages on account of loss of stumpage, as a reason
 
 *1380
 
 ably foreseeable result of defendant’s breach of warranty, by failing to realize the advantages of the lower average rates which would have resulted it Everett had been able to harvest the amount of timber estimated to it.”
 
 Id.
 

 Thus, the Court of Claims determined that an equitable adjustment in the price of the timber Everett harvested was an appropriate remedy for the government’s breach because it placed Everett in the position it would have been in had the government not breached the contract by providing an inaccurate estimate in the prospectus. The court also allowed Everett to recover for unrecouped costs for road construction at the timber site.
 
 Id.
 
 at 434.
 

 Having affirmed the ASBCA’s ruling that the government was hable to Applied for breach of contract, we remanded the case to that Board for proceedings on damages. We stated that if it was determined any cylinders were delivered to DLA, Applied should have the opportunity to establish that it was entitled to an equitable adjustment in the price of the cylinders. However, we continued, if it was determined that no cylinders were delivered to DLA, then Applied was limited to the remedy available to it under the contract’s termination for convenience clause.
 
 Applied Cos.,
 
 325 F.3d at 1341-42.
 

 An equitable price adjustment recognizes that, because of economies of scale, the non-breaching party may have estimated a lower price per unit for the goods or services it contracted to deliver. As a result, the non-breaching party suffers damages for the lesser quantity of goods or services it provides at the lower price before termination. Thus, the “equitable adjustment compensates for changes by paying a contractor its increased costs resulting from the change, plus an allowance for profit on that cost.”
 
 Id.
 
 at 1341 (citing
 
 United States v. Callahan Walker Constr. Co.,
 
 317 U.S. 56, 61, 63 S.Ct. 113, 87 L.Ed. 49 (1942)). Repricing in this fashion may place the contractor in the position it would have occupied but for the government’s breach. At the same time, it does not allow the non-breaching contractor to collect a windfall due to the government’s overestimation.
 

 We do not agree with Hi-Shear that the decision of the Court of Federal Claims in this case is inconsistent with
 
 Applied Cos.
 
 First, the court properly rejected Hi-Shear’s contention that it should be awarded damages computed on the base year and all four option years.
 
 See Gov’t Sys. Advisors, Inc. v. United States,
 
 847 F.2d 811, 813 (Fed.Cir.1988) (stating that where a contract is renewable “at the option of the Government,” the government is Under no obligation to exercise the option). The court thus correctly held that any damages recovery by Hi-Shear would be limited to the base year and the two option years that CECOM exercised.
 

 Second, the Court of Federal Claims’ rejection of Hi-Shear’s claim for lost profits on unordered spare parts during the base year and the two exercised option years was fully consistent with
 
 Applied Cos.
 
 There, as just discussed, we stated that where the government’s breach of contract is in the form of inadequately or negligently prepared estimates, anticipatory lost profits are not available for the overestimated, unordered quantities. However, in rejecting Hi-Shear’s claim, the court stated: “[T]he court finds that plaintiff has failed to prove that it is entitled to lost profits.”
 
 Hi-Shear,
 
 53 Fed. Cl. at 444. This statement seems to suggest that Hi-Shear’s lost profits claim failed for lack of proof. However,
 
 Applied Cos.
 
 makes it clear that, regardless of the evidence, as a matter of law lost profits on unordered quantities are not available to a contractor in a case such as this.
 

 
 *1381
 
 Finally, after determining the parameters of a damages recovery, the Court of Federal Claims made a reasonable effort to place Hi-Shear in as good a position as it would have been in had CECOM not overestimated the government’s spare parts requirements. As described above, the court first determined, using the best available data, what CECOM would have estimated for each of the spare parts contracts had it properly computed the net base monthly average for the parts at issue. Using the resulting revised estimates, the court then calculated the value of the contracts using the line item prices in Hi-Shear’s original bids for the contracts.
 
 [3]
 
 The court determined that what Hi-Shear would have been paid if CECOM had ordered quantities equal to the court’s revised estimates exceeded what Hi-Shear actually was paid. The court awarded Hi-Shear unrecouped fixed overhead and G & A costs on the difference between what the court determined Hi-Shear would have been paid and what it actually was paid, based on the DCAA audit rate.
 
 Id.
 
 We think that the damages model employed by the Court of Federal Claims was a reasonable attempt to put Hi-Shear in the position it would have been in had there been no breach. Moreover, the court made a reasonable attempt to avoid giving Hi-Shear a windfall due to CECOM’s negligence.
 

 It is true that we stated in
 
 Applied Cos.
 
 that
 
 Everett Plyioood
 
 “suggests the proper methodology” for determining the recovery to which a contractor is entitled when the government breaches a requirements contract by providing faulty pre-bid estimates.
 
 Applied Cos.,
 
 325 F.3d at 1340. That is not to say, however, that
 
 Everett Plywood
 
 represents the only approach in such a case. To begin with, the approach of an equitable adjustment in contract price is not workable in all breach situations. For example, where the government orders no goods or services at all, an equitable price adjustment is impossible because there is no price to be adjusted.
 
 See id.
 
 at 1341-42. Second, as the Court of Federal Claims recognized, “[i]n a number of complex contract situations, exact computation of damages may prove to be extremely difficult.”
 
 Hi-Shear,
 
 53 Fed. Cl. at 437. For this reason, the court stated, “[t]he plaintiff can meet its burden of proving damages if it ‘furnishes the court with a reasonable basis for computation, even though the result is only approximate.’ ”
 
 Id.
 
 (quoting
 
 Wunderlich Contracting Co. v. United States,
 
 173 Ct.Cl. 180, 351 F.2d 956, 968 (1965)). In this case, as noted above, the Court of Federal Claims turned to the “jury verdict” approach, an approved method of approximating contract damages.
 
 See Bluebonnet Sav. Bank, F.S.B. v. United States,
 
 266 F.3d 1348, 1357 (Fed.Cir.2001) (“We have also allowed so-called ‘jury verdicts,’ if there was clear proof of injury and there was no more reliable method for computing damages — but only where the evidence adduced was sufficient to enable a court or jury to make a fair and reasonable approximation.”);
 
 Dawco Constr.,
 
 930 F.2d at 880-81. To hold that
 
 Everett Plywood’s
 
 approach of an equitable adjustment in contract price represents the only acceptable method for determining damages in a case such as this would deprive the Court of Federal Claims and the Board of Contract Appeals of the flexibility that the law
 
 *1382
 
 recognizes is available in appropriate cases. Finally, such a holding would run counter to the well settled proposition that, subject to certain controlling principles (for example, the recovery of damages must not serve as a windfall to the non-breaching party), determination of damages is a matter within the trial court’s discretion.
 
 See Ferguson Beauregard v. Mega Sys.,
 
 350 F.3d 1327 (Fed.Cir.2003) (“Determining the amount of damages to award ... is not an exact science, and the methodology of assessing and computing damages is committed to the sound discretion of a district court.”).
 

 III.
 

 We have addressed at some length Hi-Shear’s principal argument on appeal-— that the decision of the Court of Federal Claims was contrary to our decision in
 
 Applied Cos.
 
 and that Hi-Shear was entitled to an equitable adjustment in the contract price of the spare parts delivered under contracts F301 and F305. We have explained that the court’s decision was consistent with
 
 Applied Cos.
 
 Hi-Shear also makes an alternative argument, however. It contends that if it is not entitled to an equitable price adjustment, it still should recover either anticipatory lost profits in the amount of $363,649 or reliance damages in the form of its unrecouped expenditures. Hi-Shear calculates those expenditures at $298,787.
 

 Hi-Shear asserts first that
 
 Applied Cos.
 
 is not controlling precedent because neither party in that case addressed the matter of an equitable adjustment and because the panel
 
 sua sponte
 
 raised the point.
 
 See Boeing N. Am., Inc. v. Roche,
 
 298 F.3d 1274, 1282 (Fed.Cir.2002) (stating that the court was not bound by a prior decision on a particular issue where the issue “was neither argued nor discussed in our opinion”). We do not agree. It is enough to note that, in
 
 Applied Cos.,
 
 (i) the ASBCA stated, both in its original decision and in its denial of the government’s request for reconsideration, that Applied was entitled to a recovery of lost profits; and (ii) the proper measure of Applied’s damages was an issue on appeal and was addressed by the parties. Under these circumstances, it was entirely appropriate for the
 
 Applied Cos.
 
 court to address the issue of damages and to consider the appropriateness of an equitable adjustment in the contract price.
 

 Turning to the merits of Hi-Shear’s alternative argument, we have already explained above in our discussion of
 
 Applied Cos.
 
 why Hi-Shear is not entitled to recover the profits it anticipated based on the quantities of spare parts estimated by CE-COM for the two contracts. That leaves Hi-Shear’s claim for reliance damages.
 

 The DCAA audit determined that the cost to Hi-Shear to produce the number of spare parts that were ordered was $536,725, while the sum Hi-Shear received for those parts based upon its bid price was $237,938, resulting in a loss of $298,787.
 
 Hi-Shear,
 
 53 Fed. Cl. at 444. Hi-Shear asserts that it is entitled to recover that loss as reliance damages on account of CE COM’s faulty estimates.
 

 We do not think that Hi-Shear is entitled to recover its so-called reliance damages. “The underlying principle in reliance damages is that a party who relies on another party’s promise made binding through contract is entitled to damages for any losses actually sustained as a result of the breach of that promise.”
 
 Glendale Fed. Bank, F.S.B. v. United States,
 
 239 F.3d 1374, 1382 (Fed.Cir.2001). In other words, reliance damages allow a plaintiff to recover expenditures made in reliance on the contract.
 
 Id.
 
 at 1382-83.
 

 What Hi-Shear is seeking to recover — -the difference between its costs in producing the spare parts it delivered and what it was paid for those spare parts based upon its bid price — -are not reliance damages. What Hi-Shear actually is
 
 *1383
 
 seeking to recover are its total costs under the requirements contracts. “Under the total cost method, the measure of damages is the difference between the actual cost of the contract and the contractor’s bid.”
 
 Raytheon Co. v. White,
 
 305 F.3d 1354, 1365 (Fed.Cir.2002). The total cost method of recovery is not favored and will not be used if, as here, there is another, more rehable method available by which to establish the contractor’s damages.
 
 Id.
 
 In any event, before a contractor can obtain the benefit of the total cost method, it must prove: (1) the impracticability of proving its actual losses directly; (2) the reasonableness of its bid; (3) the reasonableness of its actual costs; and (4) lack of responsibility for the added costs.
 
 Propel-lex Corp. v. Brownlee,
 
 342 F.3d 1335, 1339 (Fed.Cir.2003). Not only has Hi-Shear not advanced any argument as to why it meets the four requirements for a total cost recovery, but the way it structured its bid would bar it from such a recovery.
 

 Hi-Shear’s chief executive officer, Mr. Mooney, testified that the reason the cost of producing ordered spare parts was above the bid price was because Hi-Shear had to perform engineering for the contract that would have been capitalized and amortized over the unordered parts. As the Court of Federal Claims pointed out, however, Mr. Mooney incorrectly assumed that Hi-Shear was entitled to all of the estimated contract requirements for the base year and the four option years.
 
 Id.
 
 In short, the premise for Hi-Shear’s bid was not reasonable.
 

 True reliance damages — in the form of expenditures made in reliance on the contract — may be recoverable when a requirements contract is terminated for the convenience of the government. According to Federal Acquisition Regulation (“FAR”) § 52.249-2, “Termination for Convenience of the Government (Fixed Price),” the government may pay to the contractor,
 
 inter alia,
 
 “[t]he costs incurred in the performance of the work terminated, including initial costs and preparatory expenses allocable thereto” and profit on that amount. 48 C.F.R. § 52.249-2(g)(2)(i), (iii) (1993). In this case, however, Hi-Shear’s contracts were not terminated for convenience; rather, they continued through the base year and the first two option years.
 

 CONCLUSION
 

 For the foregoing reasons, the decision of the Court of Federal Claims is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The T-39 Circuit Switch is a tactical communications switch that provides automatic switching for the Tri-service Tactical Communications System.
 

 [2]
 

 . We stated in
 
 California Federal Bank
 
 that "Dlost profits are a recognized measure of damages where their loss is the proximate result of the breach and the fact that there would have been a profit is definitely established, and there is some basis on which a reasonable estimate of the amount of the profit can be made.” 245 F.3d at 1349 (quoting
 
 Neely v. United States,
 
 152 Ct.Cl. 137, 285 F.2d 438, 443 (1961)).
 

 [3]
 

 . The Court of Federal Claims did not explain why it used Hi-Shear's original bid prices when recalculating the value of the contracts. We assume that it did so because Hi-Shear itself did not alter its bid prices in the face of different quantity ranges in the IFBs. In any event, Hi-Shear does not allege that it would have bid higher prices had it had the revised estimates. It merely states that it "defies common sense” that it would have made the same bid decisions, without saying what it actually would have done.