MAYER, Circuit Judge,
dissenting-in-part.
I dissent from the majority’s reversal of the Court of Federal Claims’ damages award. The trial court made a reasonable and well-supported determination of the damages sustained by First Federal Lincoln Bank (“First Federal”), and the majority offers no persuasive justification for setting it aside. Furthermore, after deciding to jettison the expectancy damages theory upon which this case was tried, the majority precludes First Federal from presenting evidence as to the damages it suffered under the majority’s newly-adopted damages paradigm. This is fundamentally unjust.
I. Standard of Review
The Court of Federal Claims conducted a two-week trial on damages, at which it heard expert witnesses from both sides, weighed the evidence and made a determination as to the quantum of damages sufficient to remedy the government’s breach. As the majority acknowledges, the trial court properly determined that First Federal was entitled to damages for the value of deposits it was forced to run off to comply with elevated capital requirements. Ante at 1316. The majority does not dispute that the trial court’s award of approximately $4.5 million in damages was a reasonable approximation of the value that First Federal’s deposits would have had, at the date of trial, if the breach had not forced it to “shrink” by running off deposits. The majority concludes, however, that the trial court’s damages award must be set aside because damages were calculated as of the date of trial rather than as of the date of breach. Id. at 1316.
This court has long acknowledged that the “ascertainment of damages is not an exact science,” Bluebonnet Sav. Bank, F.S.B. v. United States, 266 F.3d 1348, 1355 (Fed.Cir.2001), and that “the trial court [is] in the best position to make the factual determinations necessary to establish an appropriate damages award.” Bluebonnet Sav. Bank, F.S.B. v. United *1323 States, 339 F.3d 1341, 1346 (Fed.Cir.2003). During a trial on damages, the trial court gains an “intimate familiarity” with the facts in a complex case, see id., and is in a superior position to make intricate judgments as to the quantum of monetary damages sufficient to make an injured claimant whole. Accordingly, this court should set aside a trial court’s damages calculation only under exceptional circumstances, such as where the decision is “ ‘clearly unreasonable, arbitrary or fanciful’ ” or where “ ‘the record contains no evidence upon which the [trial] court could have rationally based its decision.’ ” Hi-Shear Tech. Corp. v. United States, 356 F.3d 1372, 1377-78 (Fed.Cir.2004) (quoting Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1341 (Fed.Cir.1999)). In making damages determinations, the Court of Federal Claims “‘occupies the position of a jury under like circumstances; and all that litigants have any right to expect is the exercise of the court’s best judgment upon the basis of the evidence provided by the parties.’ ” Bluebonnet, 266 F.3d at 1357 (quoting Specialty Assembling & Packing Co. v. United States, 174 Ct.Cl. 153, 355 F.2d 554, 573 (1966)).
The majority fails to establish clear error in the trial court’s decision to calculate damages as of the date of trial rather than as of the date of breach. To the contrary, the trial court’s damages methodology is fully supported—even compelled—by this court’s precedent.
II. Discounting Damages to the Date of Judgment
The majority’s conclusion that damages must be calculated as of the date of breach was considered and expressly rejected in Energy Capital Corp. v. United States, 302 F.3d 1314, 1330 (Fed.Cir.2002). There, a financing corporation sued for damages after the government breached a contract allowing it to provide financing for energy improvements in subsidized housing. Id. at 1317-20. The Court of Federal Claims awarded the corporation the profits it lost as a result of the government’s breach, discounted to the date of judgment. On appeal, the government argued that the damage award should have been discounted to the date of breach instead of the date of judgment. Id. at 1330. This court rejected that contention, concluding that since lost profits were to accrue over the course of the contract, damages were correctly discounted to the date of judgment. Id.
“ ‘The time when performance should have taken place is the time as of which damages are measured.’ ” Id. (quoting Reynolds v. United States, 141 Ct.Cl. 211, 158 F.Supp. 719, 725 (1958)). Lost profits typically have not accrued on the date of breach; they accrue on an ongoing basis throughout the contract term. Id. Because lost profits and other expectancy damages “would have accrued on an ongoing basis over the course of the contract,” damages should properly be awarded as of the date of judgment rather than the date of breach. Future profits are discounted to the date of judgment to reflect the present value of money. Id. at 1330 (“Discounting future lost profits to the date of judgment merely converts future dollars to an equivalent amount in present dollars at the date of judgment .... ”); see also N. Helex Co. v. United States, 225 Ct.Cl. 194, 634 F.2d 557, 562-64 (1980) (awarding damages for breach of contract discounted to the date of judgment).
The majority is simply wrong when it states that “First Federal’s claim for lost profits was disallowed by the Court of Federal Claims.... ” Ante at 1317. The Court of Federal Claims stated—repeatedly and unambiguously—that its damages award was based on a “lost profits” mod *1324 el.[1] First Fed. Lincoln Bank v. United States, 73 Fed.Cl. 633, 643 (2006). The damages award was premised entirely on the “lost profits” model prepared by First Federal’s expert witness, Dr. Donald Kaplan. Id. This model had two components: (1) “$250 million in deposits lost from missed growth opportunities,” and (2) “$300 million in deposits lost due to the shrink.” Although the trial court rejected the first component of Dr. Kaplan’s model as unduly speculative, it awarded damages based on “what remain[ed] of Dr. Kaplan’s lost profits model ” which was “his calculation of [First Federal’s] lost franchise value due to the foregone deposits caused by the thrift’s post-breach shrink.” Id. (emphasis added).
The trial court’s damage award was designed to approximate “the discounted present value of the net interest income, operating expenses, and fee income generated by the foregone deposits in perpetuity.” Id. Given that the damage award was essentially an award for projected revenues—less projected expenses—on foregone deposits, it is hard to fathom how it can be perceived as anything other than a lost profits award. Although the damage award is sometimes referred to as a “lost franchise value” award rather than a “lost profits” award, the difference between the two types of awards is one of semantics, not substance. The award was specifically designed to compensate First Federal for projected income, less projected expenses, on foregone deposits, and the trial court therefore properly treated it as a lost profits award. See Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed.Cir.1994) (“Regardless of the characterization of the case ascribed by [the plaintiff] in its complaint,” the court must “look to the true nature of the action.”); see also LaSalle Talman Bank, F.S.B. v. United States, 462 F.3d 1331, 1337 (Fed.Cir.2006) (affirming an award of *1325 special dividends in a damages award “regardless [of] whether the dividends were called special or mandatory”); Balboa Ins. Co. v. United States, 775 F.2d 1158, 1163 (Fed.Cir.1985) (surety had right to “total fund” remaining in government’s possession regardless of “what [the fund] is called”).
The majority’s assertion that the trial court’s damage award cannot be deemed a lost profits award, ante at 1317-18, is also curious because even the government acknowledges that the award was for lost profits. The government explains: “Since a valuation of [First Federal’s] franchise (including any premia paid for [First Federal’s] deposits) would incorporate the future expected profits of the franchise, it is the equivalent of a ‘lost profits’ award.” Since the damage award was an award of lost profits, under the reasoning of Energy Capital, the trial court was justified in calculating damages as of the date of trial rather than the date of breach.
The majority’s assertion that “First Federal’s claim for lost profits was disallowed by the Court of Federal Claims, and that ruling has not been appealed,” ante at 1317, is not correct. First Federal states expressly that the Court of Federal Claims made an award of lost profits, and argues that that award should be affirmed on appeal:
The government has failed to meet its burden of showing that the trial court’s award of expectancy damages measured by the value of [First Federal’s] foregone deposits caused by the government’s breach of the Great Plains contract was clearly erroneous, or that the quantum of damages awarded constituted an abuse of discretion. “Lost profits may be recovered where the plaintiff establishes by a preponderance of the evidence that: (1) the loss was the proximate result of the breach; (2) the lost profits were foreseeable; and (3) a sufficient basis exists for estimating the lost profits with reasonable certainty.” The Court of Federal Claims found that [First Federal] had satisfied this burden and awarded $4.5 million in expectancy damages based on the diminished value of [First Federal’s] franchise resulting from the deposits that the Great Plains breach caused [First Federal] to run off.
First Federal Brief at 44-45 (footnotes and citations omitted) (emphases added); see also id. at 70 (“Lost franchise value models provide a well-settled measure of lost profits in Winstar cases.”); id. at 80 (“The trial court correctly awarded expectancy damages based on lost deposit franchise value....”).
The Court of Federal Claims did reject one portion of First Federal’s claim for lost profits. First Federal initially sought to recover lost earnings on foregone deposits based on an adjustable mortgage backed security (“MBS”) rate. The court, however, found that this calculation was unduly speculative because First Federal “did not maintain the adjustable rate MBS in its investment portfolio following the breach.... ” First Fed., 73 Fed.Cl. at 644. This is the portion of the lost profits award that has not been appealed.
Clearly, lost profits from an asset and that asset’s fair market value are related concepts. See, e.g., Protectors Ins. Serv., Inc. v. United States, 132 F.3d 612, 616 (10th Cir.1998) (the “prospect of future earnings is considered in arriving at the fair market value of a given business”); Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1236 (10th Cir.2003) (“fair market value ‘necessarily incorporate^] expected future profits’ ”) (emphasis in original, citations omitted). The trial court elected to proceed on a lost profits rather than a fair market value model, and the majority has shown no clear error in its decision to do so. See Bank of Am., F.S.B. v. Doumani, *1326 495 F.3d 1366, 1372 (Fed.Cir.2007) (the clear error standard governs a trial court’s “findings about the general type of damages to be awarded (e.g., lost profits)”).
The trial court’s damages methodology is also fully consistent with Globe, a Wins-tar case with facts similar, in many respects, to those of the present case. In Globe, the government’s breach caused Globe Savings Bank to downsize by disposing of its branch networks. Globe Sav. Bank, F.S.B. v. United States, 65 Fed.Cl. 330, 345-46 (2005), aff'd in relevant part and vacated in part, 189 Fed.Appx. 964 (Fed.Cir.2006). Globe was forced to run off $160 million in deposits to meet elevated capital requirements. Id. The value of Globe’s foregone deposits was calculated using a deposit premium based on branch sales occurring close to the time of trial, not at the time of breach. Id. at 358. The Globe approach to damages was properly used by the Court of Federal Claims as a template for awarding damages in the present case. The court explicitly stated that it was relying on the methodology “affirmed by the Federal Circuit” in Globe. 73 Fed.Cl. at 646.
III. Expectancy Damages
Although the majority acknowledges that expectancy damages, which typically take the form of an award of lost profits,[2] can be awarded as of the date of trial rather than the date of breach, it concludes that the damages for the lost franchise value associated with First Federal’s foregone deposits cannot properly be deemed expectancy damages. Ante at 1317-18. It cites no authority to support this conclusion. Nor does it cite any authority for the proposition that the franchise value associated with First Federal’s lost deposits must be calculated as of the date of breach. Instead, it simply offers the bald assertion that First Federal’s “claim for lost franchise value associated with lost deposits ... was in fact a claim for loss of income-generating property.” Id. at 1317. It then cites to a case from the Second Circuit, Schonfeld v. Hilliard, 218 F.3d 164, 176 (2d Cir.2000), for the proposition that income-producing property should be valued at the time of breach rather than the time of judgment.
Schonfeld, however, offers no support for the majority’s decision to reject the trial court’s damages award. There, the defendants’ breach caused the plaintiff to lose an exclusive license to distribute television programming. 218 F.3d at 179. The plaintiff originally claimed damages for lost profits, but the court rejected the claim because the contract related to a new entertainment venture and the plaintiff “could establish neither the existence nor the amount of lost profits with reasonable certainty.” Id. at 173. However, the court awarded the plaintiff damages for the fair market value of the exclusive license, concluding that the license had a readily ascertainable market value and therefore provided an accurate measure of the loss sustained. Id. at 176-79.
Nothing in Schonfeld conflicts with the Court of Federal Claims’ damages determination in the present case. At most, Schonfeld stands for the proposition that, under certain circumstances, an award for the fair market value of an asset provides *1327 a more reliable measure of damages than lost profits.
Here, valuing the lost deposits as of the date of breach would have provided neither an accurate nor a reliable measure of the damages First Federal sustained. In the early 1990s, following the government’s breach, the savings and loan industry was in a state of tumult. The premia paid for deposits at the time of breach were significantly lower than the premia paid near the time of trial. Because First Federal had little choice about when to divest itself of deposits—it was compelled to run off deposits soon after the government increased minimum capital requirements—its recovery should not be predicated on the relatively low deposit premia prevailing in the period immediately following the government’s breach.
“The general type of damages to be awarded, their appropriateness, and rates used to calculate damages are reviewed for clear error.” Hunt Trust Estate v. United States, 470 F.3d 1044, 1049 (Fed.Cir.2006); see Bank of Am., 495 F.3d at 1372. Because there has been no showing of clear error in the trial court’s damages award, I would affirm it.
IV. Waiver
Having concluded that damages must be calculated as of the date of breach, the majority then denies First Federal the opportunity to present evidence regarding the damages it suffered as of that date. Given that the government’s liability for breach of contract is undisputed,[3] this decision is both puzzling and disturbing.
At trial, First Federal presented extensive evidence about the profits it lost as a result of the government’s breach. See First Federal, 73 Fed.Cl. at 643-49. Given that lost profits had been awarded as of the date of trial in both Energy Capital and Globe, First Federal quite reasonably directed its evidence to the value its deposit franchise would have had at the date of trial, if the government had not breached its contract. Id. Although the government raised a wide array of objections to First Federal’s damages calculations at trial, it never argued that First Federal’s deposits should be valued at the time of breach rather than the time of trial. First Federal therefore had no reasonable way of anticipating that it would need to present damages evidence as of the date of breach.
Even where questions exist as to the exact measure of damages, it is “a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.” Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931). The government’s liability is clear, and the majority has advanced no persuasive justification for denying First Federal the damages it is due. See Franconia Assocs. v. United States, 61 Fed.Cl. 718, 746 (2004) (“[C]are must be taken lest the calculation of damages become a quixotic quest for delusive precision or worse, an insurmountable barrier to any recovery.”).

. The Court of Federal Claims explained its damages award as follows:
Dr. Kaplan's lost profits model calculates [First Federal’s] damages based on $550 million in foregone deposits the thrift allegedly lost as a result of the Government’s breach. Dr. Kaplan's foregone deposit amount is derived from [First Federal’s] post-breach (1) shrink and (2) missed growth opportunities. The court concluded supra that Dr. Kaplan’s projection of [First Federal’s] post-breach deposit growth rate is speculative and therefore rejects the alleged $250 million in foregone deposits from [First Federal’s] missed growth opportunities that Dr. Kaplan factors into his lost profits model. Remaining is the alleged $300 million in foregone deposits from [First Federal’s] post-breach shrink, which is comprised of $225 million from deposit runoff and $75 million from branch office closings. The court concluded supra that the breach caused [First Federal] to shrink its institution and, therefore, [First Federal] may recover damages from the foregone deposits due to that shrink.
As explained supra, Dr. Kaplan’s lost profits model calculates damages by adding [First Federal’s] lost earnings from foregone deposits with [First Federal's] lost franchise value due to foregone deposits and is then reduced pro rata by multiplying it by 46%. The court concluded supra that Dr. Kaplan’s calculation of [First Federal’s] lost earnings from foregone deposits is speculative because it relies on a proxy to determine the thrift’s yield on foregone assets. What remains of Dr. Kaplan’s lost profits model is his calculation of [First Federal's] lost franchise value due to the foregone deposits caused by the thrift's post-breach shrink. According to Dr. Kaplan, a lost franchise value calculation determines the value the thrift’s deposit franchise would have had on the date of trial had the Government not breached its contract. Dr. Kaplan calculates [First Federal's] lost franchise value by multiplying the thrift’s foregone deposits by a branch sale premium. Dr. Kaplan asserts that this methodology approximates the discounted present value of the net interest income, operating expenses, and fee income generated by the foregone deposits in perpetuity.
First Fed., 73 Fed.Cl. at 646 (emphases added).

. Expectancy damages are the ordinary measure of damages in breach of contracts cases. LaSalle Talman Bank, F.S.B. v. United States, 317 F.3d 1363, 1371 (Fed.Cir.2003); Glendale Fed. Bank, F.S.B. v. United States, 239 F.3d 1374, 1380 (Fed.Cir.2001). Such damages make the injured party whole by giving him the benefits he "expected” to receive had the breach not occurred. Glendale, 239 F.3d at 1380. Expectancy damages normally take the form of lost profits, but can also include other incidental damages. LaSalle, 317 F.3d at 1371; Glendale, 239 F.3d at 1380.

. The government does not appeal the determination that it is liable to First Federal for breach of contract.